IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

James Gunnells,                          )     Case No. 8:15-cv-01142-MGL-JDA
                                         )
        Petitioner,                      )
                                         )
        v.                               )     **REPORT AND RECOMMENDATION**
                                         )     **OF MAGISTRATE JUDGE**
Larry Cartledge,                         )
                                         )
        Respondent.                      )
_____  )

        This matter is before the Court on Respondent's motion for summary judgment.

[Doc. 19.]  Petitioner is a state prisoner who seeks relief under 28 U.S.C. § 2254.  Pursuant

to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C.,

this magistrate judge is authorized to review post-trial petitions for relief and submit findings

and recommendations to the District Court.

        Petitioner, through counsel, filed this Petition for writ of habeas corpus on March 10,

2015.  [Doc. 1.]  On August 6, 2015, Respondent filed a motion for summary judgment and

a return and memorandum.  [Docs. 19, 20.]  Petitioner filed a response in opposition on

October 23, 2015 [Doc. 27], and Respondent filed a reply on October 29, 2015 [Doc. 29].

        Having carefully considered the parties' submissions and the record in this case, the

Court recommends Respondent's motion for summary judgment be granted.

## BACKGROUND

        A the time the Petition was filed, Petitioner was incarcerated in the Perry

Correctional Institution of the South Carolina Department of Corrections pursuant to orders

of commitment from the Clerk of Court for Bamberg County.  [Doc. 1 at 1.]  Petitioner was

indicted in March 2004 for burglary in the first degree, assault and battery with intent to kill,

possession of a weapon during the commission of a violent crime, armed robbery, and criminal conspiracy, two counts of grand larceny, and three counts of kidnapping. [App. 783–820.[1]] On October 12, 2004, represented by Christopher Wilson ("Wilson") and Steve Chandler, Petitioner proceeded to trial.[2] [App. 1–503.] At the conclusion of the trial, the jury returned a verdict of guilty with respect to the charges of armed robbery, criminal conspiracy, possession of a weapon during the commission of a violent crime, burglary in the first degree, and two counts of kindnapping; Petitioner was found not guilty with respect to the charges of assault and battery with intent to kill, one count of kidnapping, and two counts of grand larceny. [App. 486–87.] Petitioner was sentenced to life imprisonment on the charge of burglary in the first degree and thirty years for the armed robbery charge, to run consecutive, and five years for the possession of a weapon during the commission of a violent crime charge, five years for the criminal conspiracy charge, and thirty years for each of the two kidnapping charges, to run concurrent. [App. 501; Doc. 1 at 1.]

**Direct Appeal**

Petitioner appealed his conviction. Lanelle C. Durant of the South Carolina Commission on Indigent Defense filed a brief on Petitioner's behalf, dated September 27, 2007, in the South Carolina Court of Appeals, raising the following issue:

> Did the trial court err in failing to suppress Sease's identification of Appellant where the identification was

---

[1]The Appendix can be found at Docket Number Entries 20-1 through 20-5.

[2]Petitioner was represented by two attorneys at trial; however, it appears that Petitioner is bringing this action against only Wilson. [*See* App. 509 (PCR application listing only Wilson), App. 518–695 (transcript demonstrating that only Wilson testified at the PCR hearing); Doc. 1 at 13 (Petition listing only Wilson).]

suggestive and unreliable and where the error was not harmless?

[Doc. 20-6 at 4.]  The South Carolina Court of Appeals affirmed Petitioner's conviction. [Doc. 20-8.] Petitioner filed a petition for rehearing which was denied on February 26, 2009 [Doc. 20-9]; Durant filed a petition for writ of certiorari in the Supreme Court of South Carolina on Petitioner's behalf, dated March 23, 2009 [Doc. 20-10], which was denied on October 7, 2009 [Doc. 20-12].  Remittitur was issued on October 12, 2009.  [Doc. 20-13.]

**PCR Applications**

Petitioner filed a pro se application for post-conviction relief ("PCR") on June 20, 2005; on September 18, 2006, this action was dismissed without prejudice because Petitioner had filed a motion for reconsideration of sentence that had not been heard by the trial judge.  [*See* Doc. 20 at 8.]

On April 5, 2010, Petitioner filed a second pro se application for PCR, in which he alleged he was being held in custody unlawfully based on the following grounds:

(a)    Ineffective Assistance of trial counsel

(b)    Sixth Amendment Violation

(c)    Fourteenth Amendment violation

[App. 507.]  In support of his grounds for relief, Petitioner provided the following facts, quoted substantially verbatim:

(a)    Trial counsel failed to do any proper investigation, or prepare for defense

(b)    same as above

(c)    same as above

[*Id.*]  The State filed a return, dated October 20, 2010.  [App. 512–15.]

3

A hearing was held on January 27, 2012, at which Petitioner was represented by Tricia Blanchette. [App. 517–696; 769.] The PCR court filed an order denying and dismissing the PCR application with prejudice on August 13, 2013. [App. 769–82.]

A notice of appeal was timely filed. David Alexander ("Alexander"), of the South Carolina Commission on Indigent Defense, filed on Petitioner's behalf a *Johnson*[3] petition for writ of certiorari, dated March 5, 2014, in the Supreme Court of South Carolina asserting the following as the sole issue presented:

> Whether trial counsel was ineffective in derogation of petitioner's Sixth Amendment right to counsel because he failed to move to suppress evidence from a container that was searched without a warrant in violation of petitioner's Fourth Amendment rights?

[Doc. 20-14 at 3.] At the same time Alexander submitted a petition to be relieved as counsel. [*Id*. at 10.] Petitioner filed a pro se petition for writ of certiorari, dated June 23, 2014, raising the following issues, quoted substantially verbatim:

> 1. Whether trial counsel was ineffective in violation of Petitioners Sixth Amendment right to counsel because he failed to prepare and investigate prior to trial?
>
> 2. Whether trial counsel was ineffective in violation of Petitioners Sixth Amendment right to counsel because he failed to investigate or utilize co-defendant Tivo Lee as a witness?
>
> 3. Whether trial counsel was ineffective in violation of Petitioners Sixth Amendment right to counsel because he failed to discuss the indictments and the defects with Petitioner prior to trial?

---

[3]A *Johnson* petition is the state PCR appeal analogue to an *Anders* brief; a brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim. *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

4

4.    Whether trial counsel was ineffective for failing to move to sup[p]ress a pawn receipt when it was prejudicial to Petitioners argument and could've been contradicted if it was investigated?

5.    Whether trial counsel was ineffective for failing to properly raise pretrial motions on identification, seized evidence, and a supposed statement made by Petitioner to his aunt Debra Myers?

6.    Whether trial counsel was ineffective in failing to utilize the inconsistent statements made by the state's witness?

7.    Whether trial counsel was ineffective in failing to provide a valid motion for reconsideration argument in a timely manner?

8.    Whether appellate counsel was ineffective in challenging the identification of Petitioner?

9.    Whether trial counsels overall performance constituted ineffective assistance of counsel and prejudiced Petitioner from his Sixth Amendment right to a fair trial?

10.    Whether P.C.R. court judge erred in not ruling in Petitioners favor for after-discussed evidence for co-defendant Tivo Lee's testimony?

11.    Whether P.C.R. judge erred in not ruling on every issue presented?

[Doc. 20-15.]  The Supreme Court of South Carolina denied the petition on November 20, 2014, granted Alexander's petition to be relieved as counsel [Doc. 20-16], and remitted the matter to the lower court on December 8, 2014 [Doc. 20-17].

**Petition for Writ of Habeas Corpus**

As previously stated, Petitioner filed the Petition on March 10, 2015.  [Doc. 1.]  In his Petition, Petitioner raises the following grounds for relief, quoted substantially verbatim:

5

**Ground One**:    The Petitioner's right to due process of law was violated by the trial court's refusal to suppress Halman Sease's identification of the Petitioner and failure to utilize the Neil v. Biggers factors.

*Supporting Facts*:    Prior to trial, Halman Sease was not provided with a photo line-up to identify the Petitioner. Instead, at trial, Sease identified the Petitioner as one of the perpetrators, stating that he recognized him from a prior encounter with the Petitioner. The trial court refused to suppress Sease's identification of the Peititioner and refused to anayze the identification pursuant to Neil v. Biggers, 409 U.S. 188 (1972).

**Ground Two**:    The Petitioner's right to the effective assistance of appellate counsel was violated by appellate counsel's failure to properly identify the grounds for suppressing Halman Sease's identification.

*Supporting Facts*:    As noted above in Ground One, Halman Sease identified the Petitioner for the first time after viewing him in the courtroom. On appeal, appellate counsel challenged the identification based on Halman's identification of the Petitioner's clothing instead of challenging the identification based on the trial court's refusal to apply the Neil v. Biggers factors to an in-court identification made for the first time. The latter argument should have been raised on appeal by appellate counsel. This argument is presented in the event that the Court concludes that Ground One is found not to have been preserved for federal habeas review by appellate counsel.

**Ground Three**:    The Petitioner's right to the effective assistance of counsel was violated by defense counsel's failure to call the Petitioner's co-defendant Tivo Lee as a witness at his trial.

*Supporting Facts*:    At the Petitioner's PCR hearing, Tivo Lee, the Petitioner's co-defendant, testified that he committed the robbery with three other individuals: Frederick Culler, an individual named

6

"Black," and an individual named "New York." Lee further testified that the Petitioner was not involved in the robbery at all. Lee was not called as a witness at the Petitioner's trial because defense counsel did not call him to testify.

**Ground Four**:    The Petitioner's right to the effective assistance of counsel was violated by defense counsel's failure to move to suppress the items seized by the police without his consent at his apartment.

*Supporting Facts*:    The Petitioner shared an apartment with his girlfriend Niconya Brooks. After the Petitioner was arrested, the authorities obtained Brooks' consent to search the entire apartment. Within the apartment, they found a plastic container which contained several items of the Petitioner's clothing as well as his shoes. The evidence was later used to tie the Petitioner to the crime scene. Defense counsel did not move to suppress the evidence as a violation of the Petitioner's Fourth Amendment rights inasmuch as Brooks would not have had the authority to consent to a search of a personal closed container belonging to the Petitioner. See generally U.S. v. Peyton, 745 F.3d 546 (D.C. Cir. 2014).

[Doc. 1.]

As stated, on August 6, 2015, Respondent filed a motion for summary judgment. [Doc. 19.] On October 23, 2015, Petitioner filed a response in opposition [Doc. 27], and on October 29, 2015, Respondent filed a reply [Doc. 29]. Accordingly, Respondent's motion is ripe for review.

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or

8

unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56© has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

10

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)    (I) there is an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may

consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the Supreme Court of South Carolina. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[4] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson*

---

[4]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

*v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168, 1173 (4th Cir. 1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim. *See State v. McKennedy*, 559 S.E.2d 850, 854 (S.C. 2002) (reiterating that discretionary review by the Supreme Court of South Carolina is not required to exhaust available state court remedies: "[South Carolina] has identified the petition for discretionary review to [the Supreme Court of South Carolina] in criminal and post-conviction cases as *outside* South Carolina's standard review process. In [the Supreme Court of South Carolina's] 1990 order, th[e] Court stated that petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." (emphasis in original) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

### Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at

13

any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477

U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required

15

to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this actual innocence standard, the petitioner's case must be truly extraordinary. *Carrier*, 477 U.S. at 496.

## DISCUSSION

In his response in opposition to the motion for summary judgment, Petitioner explicitly withdraws Grounds Two and Three. [Doc. 27 at 3.] Accordingly, the Court considers Grounds Two and Three to be withdrawn by Petitioner and will address only Grounds One and Four.

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth

16

Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06. On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see also Richter*, 131 S.Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

**Ground One:     The Petitioner's right to the due process of law was violated by the trial court's refusal to suppress Halman Sease's**

**identification of the Petitioner and failure to utilize the *Neil v. Biggers* factors.**

The Due Process Clause provides that identification testimony resulting from unnecessarily suggestive procedures that may lead to an irreparably mistaken identification can be excluded. *Neil v. Biggers*, 409 U.S. 188, 198 (1972). "First the court must consider whether the identification procedure is unnecessarily suggestive." *Satcher v. Pruett*, 126 F.3d 561, 566 (4th Cir. 1997). Then, the court must look at the five *Biggers* factors to determine if the identification testimony is reliable under the totality of the circumstances. *Id*. A *Biggers* hearing tests the likelihood of misidentification in a pre-trial identification of the alleged criminal using the following five factors: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199–200.

Here, Halman Sease ("Sease") testified at Petitioner's trial that on the night of May 15, 2003, men entered his house, tied up Sease and his wife, and stole several items. [App. 255, 258–68.] Wilson moved to suppress Sease's in-court identification of Petitioner [App. 276], and an in-camera hearing was held [App. 281–90]. Sease testified that prior to the robbery, he had seen Petitioner several times around town and at a mutual acquaintance's house [App. 282] and had seen him the week before the robbery [App. 283]. Sease stated that he recognized Petitioner on the night of the robbery but he didn't say anything because he "figured if [he] would have said something [Petitioner] would have probably shot [Sease]." [App. 283.] Sease testified that he recognized Petitioner's hair

18

and saw that he was wearing red pants. [App. 284.] Sease further testified that he did not know Petitioner's name at the time but he told officers from the South Carolina Law Enforcement Division ("SLED") that he was 99 percent sure Petitioner had been at the robbery. [App. 285.] Sease stated that an officer brought "a bunch" of clothes for Sease to go through and he identified Petitioner's red pants and red hat from the night of the robbery. [App. 288.] At that time, the officer told him that the clothes he picked out had been taken from Petitioner. [*Id.*] At the conclusion of the hearing, the trial court denied the motion to supress without explanation. [App. 290.]

The Court finds that the trial court's ruling was not contrary to or an unreasonable application of Supreme Court precedent.[5] Sease had not identified Petitioner at the behest of the state in an out-of-court context; he had identified only clothing that belonged to Petitioner. The identification of physical evidence is not the same as an identification of a suspect. *See Inge v. Procunier*, 758 F.2d 1010, 1014–15 (4th Cir. 1985) (holding that

---

[5]The South Carolain Court of Appeals relied on the holding in *State v. Lewis*, 609 S.E.2d 515, 518 (S.C. 2005), in their dismissal of Petitioner's direct appeal. In *Lewis*, the Supreme Court of South Carolina stated that "*Neil v. Biggers* does not apply to in-court identifications and that the remedy for an alleged suggestiveness of an in-court identification is cross-examination and argument." 609 S.E.2d at 518. Petitioner contends that the holding in *State v. Lewis* is contrary to the findings of other courts, including the Fourth Circuit Court of Appeals. [Doc. 27 at 9.] The Court notes, however, that the facts in *Lewis* are distinguishable from those in the case cited by Petitioner. In *United States v. Murray*, 65 F.3d 1161 (4th Cir. 1995), Murray argued the pre-trial identification of him was unduly suggestive because the government allowed witnesses to view Murray at the defense table before trial. *Id.* at 1168. The Fourth Circuit then applied a totality of the circumstances test to determine if the in-court identification was admissible. *Id.* at 1169. However, in *Lewis*, there is no indication that witnesses were allowed to view the defendants at the defense table prior to their testimony; thus, is was not necessary to perform a *Biggers* analysis. The Court also notes that the Fourth Circuit stated in *Murray* that the witnesses would have seen Murray at the defense table immediately before testifying even if the government had not allowed them to see him before. 65 F.3d at 1169.

19

the identification of a truck before trial was "not governed by the constitutional limitations that control the identification of a defendant"). Accordingly, the Due Process Clause is not invoked, and the trial court's decision to allow Sease to identify Petitioner in court was not contrary to or an unreasonable application of Supreme Court precedent.

Moreover, even if the Court determined that *Biggers* is applicable in the present case, evidence in the record supports the trial court's decision to allow the identification. An in-camera hearing was held in response to Wilson's motion to suppress determine whether the trial court would allow the in-court identification. [App. 276–90.] Evidence was presented at the hearing that would support a finding that the totality of the circumstances and the *Biggers* factors support the trial court's decision. With respect to the witness's opportunity to view the criminal at the time of the crime, Sease stated that he viewed Petitioner during the crime, observed his clothes, and saw his hair. [App. 284.] Regarding the accuracy of the of the witness's prior description of the criminal, Sease stated that he did not know Petitioner's name and described him as stocky and well built with braided hair. [App. 287–88.] Sease admits that he did not describe the suspect's hair color, eye color, or any identifying marks to the officers and that he could not tell if the suspect had facial hair because he was wearing a scarf. [*Id.*] However, Sease also testified that he told SLED the day after the robbery that he knew one of the men who had robbed him and told them where he had encountered Petitioner before. [App. 285.] With respect to level of certainty demonstrated by the witness at the confrontation, Sease told the officers that he was 99 percent sure that Petitioner was one of the men who robbed him. [*Id.*] Accordingly, without reaching the witness's degree of attention or the length of time between the crime and the confrontation, the weight of the factors supports the trial court's finding the in-court

20

identification admissible. Thus, the state court's decision was not contrary to, nor an unreasonable application of, clearly established federal law, and it was not based upon an unreasonable determination of facts in light of the state court record. Accordingly, this ground is without merit, and summary judgment should be granted with respect to this issue.[6]

**Ground Four:**    **The Petitioner's right to the effective assistance of counsel was violated by defense counsel's failure to move to suppress the items seized by police without his consent at his apartment.**

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[7] *Richter*, 131 S.Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland

---

[6]Respondent also argues that the in-court identification was harmless in light of overwhelming evidence [Doc. 20 at 37]; however, the Court declines to reach this argument.

[7]In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. at 687. To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

21

standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

Here, the PCR court addressed Wilson's performance under the standard set forth in *Strickland*. [App. 771–72.] The PCR court found,

> Applicant alleges that counsel failed to raise pre-trial motions on identification, seized evidence, and a statement made by Applicant to his aunt, Debra Meyers. These allegations are without merit. . . . Applicant failed to show an argument not advanced by counsel in the suppression of evidence would have any likelihood of success at trial. Applicant has failed to meet his burden of proof under <u>Strickland</u> as to this issue.
>
> ***
>
> Based on the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court to grant his application. Therefore, this Application for Post-Conviction Relief must be denied and dismissed with prejudice.

[*Id.* at 776–77, 781.] The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable

22

Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.  The PCR court concluded that Petitioner failed to establish that Wilson's representation fell below an objectively reasonable standard or any resulting prejudice. [App. 781.]

The record and law supports the PCR court's determination.  At the PCR hearing, Wilson testified that he did not make a pretrial motion to suppress regarding the clothing found in Petitioner's apartment because Petitioner's live-in girlfriend, Niconya Brooks ("Brooks"), had given consent for the search.[8]  [App. 665.]  Wilson stated that he had given Petitioner the SLED report that contained the document Brooks had signed giving her written permission for the search.  [App. 665–66.]  Respondent contends that Brooks had informed the officers who performed the search that Petitioner was in the process of moving out of the apartment and Petitioner's clothes were found in a packed box that the officer's knew belonged to Petitioner alone.  [Doc. 27 at 11–14.]  The evidence presented at trial and at the PCR hearing shows that the apartment belonged to Brooks but they had both been living there [App. 91, 110, 144] and Petitioner was under arrest and present at the search and did not object to the search [*see* App. 127].

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures and provides that no warrants shall be issued except upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and

_____

[8]The Court notes that the PCR court found Wilson's testimony highly credible and found Petitioner's testimony was not credible.  [App. 772.]

the persons or things to be seized.  U.S. Const. amend. IV.  "The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's private security.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 108–09 (1977) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)).  "Warrantless searches and seizures are unreasonable absent a recognized exception to the warrant requirement."  *State v. Wright*, 391 S.C. 436, 706 S.E.2d 324, 327 (2011).

While warrantless searches are generally prohibited by the Fourth Amendment, *see Maryland v. Dyson*, 527 U.S. 465, 466 (1999), there is an exception when there is a valid consent to search a residence, *see Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). Where the defendant moves to suppress the fruits of a warrantless search, "the Government bears the burden of establishing, by a preponderance of the evidence, that it obtained valid consent to search."  *United States v. Buckner*, 473 F.3d 551, 554 (4th Cir. 2007).  It has been well-established that a third party may consent to a search.  However, two criteria must be met for such consent to be effective.  "[T]he third party must have authority to consent to the search," and "the third party's consent must be voluntary," *Trulock v. Freeh*, 275 F.3d 391, 402–03 (4th Cir. 2001) (citing *Stoner v. California*, 376 U.S. 483 (1964) and *Bumper v. N. Carolina*, 391 U.S. 543 (1968)).

The Supreme Court held in *United States v. Matlock* that a third party has actual authority to consent to a search if he possesses "common authority over or other sufficient relationship to the premises . . . sought to be inspected."  415 U.S. 164, 171 (1974). The Court stated:

> The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id*. at 172 n.7. Therefore, a co-tenant generally has authority to consent to police searches to the co-tenant's private rooms or common areas when another co-tenant is absent or does not object.

Moreover, even if a consenting third party lacks "actual authority" to consent, he may have "apparent authority" if, in that situation, "a person of reasonable caution [would believe] that the consenting party had authority" to consent. *Buckner*, 473 F.3d at 555 (alterations and quotation marks omitted). Therefore, the Fourth Amendment is not violated when officers reasonably, though erroneously, believe that the person who consents to their entry has the authority to consent. *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990).

The PCR court's decision was neither contrary to nor an unreasonable application of applicable Supreme Court precedent, particularly in light of the deferential standard applicable to ineffective assistance of counsel claims. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the

challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (Internal citation omitted)).  Because Petitioner has failed to establish a constitutional violation under the Fourth Amendment, Wilson could not have been ineffective for failing to move to suppress the in-court identification.  Accordingly, Petitioner is not entitled to habeas corpus relief on this ground.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

S/Jacquelyn D. Austin
United States Magistrate Judge

January 13, 2016
Greenville, South Carolina